CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

DAVID J. WARD (CABN 239504)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
FAX: (415) 436-7230
david.ward@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TYRONE JONES,<br><br>Defendant. | NO. 20 CR-0108 JD<br><br>**UNITED STATES' SENTENCING MEMORANDUM** |

Defendant Tyrone Jones is set to be sentenced by this Court on July 13, 2026. Jones pled guilty to one count of Conspiracy to Commit Bank and Wire Fraud in violation of 18 U.S.C. § 1349, and one count of Aggravated Identity Theft in violation of 18 U.S.C. § 1028A. Jones has admitted to participating in a mortgage loan fraud conspiracy that led to losses to the victim banks of over $1.9 million, a scheme that also involved the theft and misuse of personal identifying information from multiple victims. While the fraud conspiracy was complex and ran for over 18 months, defendant Jones only joined in its final months, had a small role in the conspiracy, and received almost no financial benefit. When he was arrested in February 2020, he promptly admitted guilt. However, in October

2021, before pleading guilty, Jones absconded from the halfway house, and was a fugitive for over four years, apparently living in Oakland with his girlfriend.

Given these factors, along with the issues addressed in an accompanying under seal filing, the government recommends that the Court sentence defendant Jones to 36 months imprisonment, three years of supervised release, an order of restitution in the amount of $1,074,972, consistent with other restitution orders in this case.

## BACKGROUND

### I. Offense Conduct

In or around May 2018, just months after his release from prison after serving over three years for his convictions for orchestrating an earlier complex, multi-defendant fraud conspiracy, Mark Hicks began anew – by devising and launching a new complex fraud scheme. *PSR* ¶ 15. Working primarily with co-defendants Dionysius "Donne" Costello and Demarcus "Smurf" Hicks (hereinafter Demarcus), Hicks illicitly obtained personal identifying information of individuals who owned properties, and then would open bank accounts in their names. *PSR* ¶ 16. He would use this PII and the accompanying bank accounts opened in the victims' names to apply for mortgage refinance loans, often for hundreds of thousands of dollars. *PSR* ¶ 16. In order to obtain the mortgage loans, Hicks, Costello, and Demarcus needed individuals who would agree to impersonate a victim and to sign fraudulent loan documents with a notary. *PSR* ¶ 17. Hicks, Costello, and Demarcus called these individuals their "workers." *Id.* Among the "workers" Hicks, Demarcus and Costello recruited were co-defendants Leif ("the Hat") Skorochod, Christopher Pool, Susan Arreola-Martin, and Jones. *Id.* At the time, Skorochod, Pool, and Arreola-Martin were living primarily on the streets and struggling with fentanyl and/or methamphetamine addictions. *See Skorochod PSR* ¶ ¶ 90-91.

Jones joined the conspiracy in the fall of 2019, after initially being hired by Demarcus to provide security at rap shows for co-defendant Hicks.[1] But by November 2019, Demarcus had recruited Jones into the fraud scheme, providing Jones with a fraudulent driver's license with Jones picture, in the name of victim D.B. and explaining that he should use this identification to impersonate D.B. when signing

[1] At the time, Hicks was a small-time Oakland rapper who performed under the name "Kafani." *see https://music.apple.com/us/artist/kafani/166977248*.

documents with a notary. *PSR* ¶ 19. Jones admitted that he used this driver's license and other personal identifying information of D.B. to sign fraudulent loan documents with a notary. *Id.* Through this fraudulent loan, Hicks obtained a loan of over $1 million using victim D.B.'s Beverly Hills home as collateral. *PSR* ¶ 20. Hicks then used these illicitly-obtained funds to purchase over $930,000 in gold bars from a gold dealer in Texas. Jones used D.B.'s counterfeit driver's license to sign for the deliveries. *PSR* ¶ 21. Demarcus, accompanied by Jones, then sold over $400,000 in gold bars from the first two deliveries to a jeweler in El Cerrito, California. The bulk of the proceeds went to Hicks. Jones says he was promised $50,000 for his role, but ultimately received only $15,000. *PSR* ¶ 22.

The conspiracy ended in February 2020, when defendants Hicks, Jones, Arreola-Martin, and Pool were charged in a Criminal Complaint. *Dkt. 1*. These same four defendants were then charged by Indictment filed on March 3, 2020. *Dkt 27.*

Jones was initially arrested in February 2020 and in July 2020 was released to a halfway house. *PSR* ¶ 6. In October 2020, Jones absconded, but was arrested eight days later. *Id.* In January 2021, Jones was released into the New Bridge Foundation substance abuse treatment program. *PSR* ¶ 7. Jones successfully completed that program and was transferred to an outpatient program, but in September 2021, he again absconded. *Id.* Jones reported that he absconded after relapsing after the death of a friend. PSR ¶ 71. He was arrested in Oakland in August 2025, where he had apparently been living for the past four years. *Id.* He has remained in custody since. Jones' activities from his arrest in February 2020 until he absconded in September 2021 are described in the United States Supplemental Sentencing Memorandum, filed under seal.

## DISCUSSION

### I. The Defendant's Sentencing Guidelines Calculation and Restitution

The government agrees with Probation's calculation of the Guidelines. Specifically, the government and U.S. Probation agree that the Guidelines for defendant Jones are as follows:

Count Group 1 (Count One)

| | | |
|---|---|---|
| a. | Base Offense Level, U.S.S.G. § 2B1.1(a)(2): | 7 |
| b. | Specific offense characteristics under U.S.S.G. Ch. 2: | |
| | Loss between $1,500,000 and $3,500,000 U.S.S.G. § 2B1.1(b)(1)(C): | +16 |
| c. | Adjusted Offense Level: | 23 |

Count Group 2 (Count Twenty-Nine)

| | | |
|---|---|---|
| a. | Base Offense Level, U.S.S.G. § 2B1.1(a)(2): | 24 Months Consecutive Sent. |
| b. | Total Number of Units: | 1.0 |
| c. | Combined Adjusted Offense Level: | 23 |
| d. | Acceptance of Responsibility: | -3 |
| e. | Total Adjusted Offense Level: | 20 |

The government's understanding, based on the criminal history information in the Presentence Report, is that Jones is a Criminal History Category IV. *PSR ¶ 49.* As a result, his Sentencing Guidelines range is 70 to 87 months, in addition to a mandatory 24-month sentence for his conviction for Count Twenty-Nine (Aggravated Identity Theft). *PSR* ¶¶ 80, 81.

**II. Sentencing Recommendation**

**a. Legal Standard**

The U.S. Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process, and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court is to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991. In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), to include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just

punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

**b. The Government's Recommended Sentence Vindicates the 18 U.S.C. §3553(a) Sentencing Factors**

*1. The Nature and Circumstances of the Offense*

By any metric, the fraud scheme and conspiracy here was complex, long-running, and resulted in over $2 million in losses, primarily to the banks and lending institutions targeted by Hicks. *See Dkt. 322 (United States' Supplemental Sentencing Memorandum and Request to Schedule a Separate Restitution Hearing).* It's success required the participation of multiple individuals engaged in criminal activity, the use of fraudulent documents, and opening and use of multiple bank accounts, and the transfer of stolen funds into gold bars and later jewelry.

Jones was an active and willing participant in the scheme, but a limited one. He knowingly impersonated one victim in order to assist Hicks in obtaining a $1 million loan (the largest loan obtained in the fraud), and he helped Demarcus sell the gold bars Hicks had obtained through the scheme. *PSR* ¶¶ 18-21, While Jones joined the conspiracy only months before it was discovered and charges were filed, he nonetheless knowingly and willfully participated. The nature and circumstances of the offense, and Jones' role in it, warrant a significant custodial sentence.

*2. The History and Characteristics of the Defendant*

Jones has an extensive criminal history, dating back over twenty years prior to his involvement in the fraud scheme charged here. He was first convicted of transporting/selling narcotics in 2020, when he was 19 years old. *PSR* ¶ 39. After violating his probation, he was sentenced to three years in prison. *Id.* Multiple other convictions followed, including convictions for commercial burglary, sex with a minor (at age 20), inflicting corporal injury on a spouse, and two convictions for felon/addict in possession of a firearm. *PSR* ¶ ¶ 39-46. He is a criminal history category VI.

Defendant Jones criminal history is extensive and appears to have continued throughout his young adulthood, into his 30s. Despite these past convictions and incarceration, Jones in 2020 chose to again knowingly participate in criminal activity. This pattern and history is troubling, but must be viewed in the context of Jones struggles with alcohol and drugs, and his lack of a stable homelife, education, or other opportunities.

Jones has also struggled with addiction to, and abuse of, alcohol, cocaine, methamphetamine, and heroin. *PSR* ¶ 70. He has suffered significant childhood trauma, abuse and neglect, scoring a 9 out of ten on the Adverse Childhood Experiences (ACE) test administered by U.S. Probation. *PSR* ¶ 70. Jones has no high school degree, nor does he have a GED.

*3. The Need to Avoid Unwarranted Sentencing Disparities*

A sentence for defendant Jones of 36 months in custody, followed by three year of supervised release, will avoid unwarranted sentencing disparities among similarly-situated defendants, particularly his co-defendants in this case. *See* 18 U.S.C. § 3553(a). While each case and each defendant must be judged independently, and understanding that the drawing comparisons in an attempt to avoid unwarranted sentencing disparities is challenging, the Court can and should weigh defendant Jones' sentence against those of his co-conspirators.

The ringleader of the scheme, Mark Hicks, was sentenced to 77 months imprisonment. *PSR* ¶ 11. Hicks' two deputies, Demarcus and Costello, were sentenced to 48 months (Demarcus) and 54 months (Costello) respectively. *PSR* ¶ 12, 13. Defendants Pool and Skorochod, both "workers" and minor participants in the scheme similar to Jones, were sentenced to 15 months (Pool) and 14.5 months (Skorochod).[2] At the time of sentencing, Pool, like Jones, was a CHC VI. *See Dkt 304* (*Pool PSR).* Skorochod was a CHC III. *Dkt. 305 (Skorochod PSR).* In both Pool and Skorochod's cases, the Court granted the government's motion asking the Court to impose a sentence below the 24-month mandatory minimum.

[2] Defendant Arreola-Martin was sentenced to 84 months in custody. While she was also a low-level "worker" in the scheme, in addition to pleading guilty to charges related to this fraud, she also pled guilty to one count of distribution of a controlled substance, admitting that she provided the fentanyl that led to her granddaughter's overdose death. *See Dkt. 313* (U.S.' Combined Sentencing Memorandum).

Jones conduct in the offense was not dissimilar to that of Skorochod or Pool. Pool, Skorochod, and Jones each admitted to impersonating one victim and to signing fraudulent loan documents in person before a notary, allowing Hicks to obtain the fraudulent loans. Like Skorochod and Pool, Jones did not reap any significant financial benefit from the scheme. *PSR* ¶ 22. And like Skorochod and Pool, Jones was involved in the scheme for only a short time; in fact, he was a participant for less time than either Pool or Skorochod.

Given all this, a sentence proportionate to that of Skorochod and Pool would normally be proper and avoid unwarranted sentencing disparities. However, in this case, defendant Jones absconded, and was a fugitive for over four years. This conduct justifies an additional period of imprisonment.

*4. U.S. Probation's Recommendation and the PSR*

In the PSR, U.S. Probation recommends that Jones be sentenced to 56 months in custody; 32 months for the conviction on Count One, and an additional mandatory 24 months for the conviction on Count 29, which has a requirement for a mandatory 24-month sentence. *PSR.* U.S. Probation believes that this variance is warranted given Jones' limited role in the conspiracy, his troubled upbringing, his drug addiction, balanced against his participation in the scheme, and the fact that he absconded from pretrial release and remained a fugitive for four years. *Id.* The government agrees with U.S. Probation's assessments, and asks the Court to adopt its sentencing rationale, but to also consider the facts in the government's Supplemental Sentencing Memorandum.

*5. Restitution*

On May 20, 2022, the government filed a Memorandum to address the issue of restitution. *Dkt. 322*. The government had initially calculated that the loss from the fraud scheme and conspiracy charged here was $2,082,640. *Id.* In August 2022, the government filed a Sentencing Memorandum in which it refined its total loss calculation to $1,904,988.79. *Dkt. 351.* This figure is based on losses to the lending institutions that were defraud by Hicks and his co-conspirators, as well as the losses suffered by their insurers. *Id.* As described in its memo on restitution, and as is recounted here, each defendant played a different role in the scheme, such that the entire loss was not reasonably foreseeable to each. *Id.* Given this, the government asked the Court to impose individual restitution amounts for each

defendant tied to the fraudulent loans in which they participated. The Court has adopted the government's proportionate distribution of restitution request, and has sentenced each defendant accordingly. *See e.g. Dkt. 370* (Hicks Judgment); *Dkt 390* (Pool Judgment).

In this case, defendant Jones only participated in the attempt to obtain one of the fraudulent loans, a mortgage refinance loan in the name of D.B. That fraudulent loan led to losses to the First American Title Insurance Company of $1,074,972. *See Dkt. 351* (U.S. Sentencing Memorandum, Mark Hicks). Because Jones participated in that fraudulent loan, and given the restitution orders issued in the co-defendants case, the United States here asks the Court to impose restitution in Jones' case of $1,074,972, and ask that restitution be paid to First American Title Company as described in the Hicks' Judgment. *Dkt. 370.*

**CONCLUSION**

A sentence of 36 months in this case reflects the seriousness of the offense (including defendant Jones' absconding from justice and remaining a fugitive for four years), will promote respect for the law, and deter Jones and others from committing similar offenses in the future.

It is also a proportionate sentence and one that avoids unwarranted sentencing disparities with the other defendants convicted and sentenced in this case. For those reasons, and for the reasons enumerated in the government's under seal filing, the government asks the Court to sentence defendant Jones to 36 months' imprisonment to be followed by three years of Supervised Release, along with an order of restitution of $1,074,972.

DATED: July 6, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ David J. Ward*
DAVID J. WARD
Assistant United States Attorney